UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  6  1-15
```

------------------------------------------------

D.L.G., an infant by her mother and natural
guardian MAYERLYN GOMEZ,   and
MAYERLYN GOMEZ, individually,

                         Plaintiffs,

        -against-

UNITED STATES,

                         Defendant.

------------------------------------------------

                           **REPORT AND
RECOMMENDATION**

                           **12-CV-7526 (RA) (RLE)**

To the HONORABLE RONNIE ABRAMS, United States District Judge:

## I.     INTRODUCTION

On October 9, 2012, Mayerlyn Gomez ("Gomez") filed the Complaint in this case on her own behalf and on behalf of D.LG, an infant under the age of eighteen years. (Guardian's Aff. at 14.) The Complaint raises claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. (Pl. Am. Verified Compl. ("Pl. Compl.") at 12.) In January 2015, the Parties notified the Court that they had agreed on a dollar amount to resolve the claims herein. On January 26, 2015, the Honorable Ronnie Abrams referred this case to the undersigned for a Report and Recommendation regarding a proposed infant compromise filed by Plaintiffs on January 8, 2015. (Doc. No. 59.) The Court has received an affidavit from Mayerlyn Gomez and an affirmation from Plaintiffs' counsel, James P. Fitzgerald, agreeing to the proposed compromise. For the reasons which follow, I recommend that the proposed infant compromise order be **GRANTED**.

## II.     BACKGROUND

On March 11, 2008, Plaintiff Mayerlyn Gomez, then thirty-five weeks pregnant with D.L.G., arrived at the Emergency Room at the Bronx-Lebanon Hospital experiencing an active seizure. (Pl. Compl. at 3; Attorney's Affirmation ("Att'y Affirm.") at 10.)  The doctors ordered a C-Section but it was delayed because of the seizure. (Att'y Affirm. at 10.)  Gomez was admitted to the hospital and remained there for D.L.G.'s birth until D.L.G.'s discharge on March 24, 2008. (Pl. Compl. at 3.)  D.L.G. was born prematurely, weighing about four-and-a-half pounds. (Att'y Affirm. at 10.)  Plaintiffs allege that D.L.G. sustained severe and permanent neurological injuries as a result of medical malpractice. (Pl. Compl. at 5.)

D.L.G. is currently in the first grade at a New York City Public School. (Att'y Affirm. at 10.)  She has a history of language delays and was diagnosed with cognitive and behavioral deficits, but D.L.G. is not in a special education program and she is not receiving any therapy in or outside of school. (*Id.*)  Gomez said D.L.G. is a "very calm and well-behaved child." (Att'y Affirm. at 10.)  D.L.G. does not take any medication and does not receive medical care aside from annual or "as needed" pediatrician visits. (*Id.*)

Marathon Infants and Toddlers, through the New York City Early Intervention Program, examined D.L.G. in November 2009. (Med. Report at 26.)  The examination revealed that D.L.G. had normal cognitive function but "had mild delays in adaptive and social functioning, and more significant delays in language and motor-skills development." (*Id.*)  On November 14, 2012, D.L.G. was examined by Joel Redfield, PhD. (*Id.*)  After reviewing D.L.G.'s records and conducting a neuropsychological examination, Dr. Redfield confirmed that D.L.G. "demonstrated average-range general intellectual ability," but that her verbal ability was "below average." (*Id.* at 27-28.)  Her "demonstrated attention" was in the "normal range." (*Id.*)  Dr.

2

Redfield noted that some of D.L.G's test results were consistent with language and motor-skills development delays. (*Id.* at 29.) He determined that D.L.G. was "deficient" in "both social and communication skills." (*Id.*)

Almost two years later, on April 12, 2014, Dr. Redfield reexamined D.L.G. (*Id.* at 20.) He again found that D.L.G. had "average-range general intelligence," with "below average verbal ability." (*Id.* at 21.) She also had "above average activity level" and was "fidgety" and was "frequently out of her seat". (*Id.*) D.L.G. scored in the "deficient" range on the auditory attention examination, but her "ability to [sustain] attention" was normal. (*Id.*) Dr. Redfield noted language, attention, and impulse-control deficiencies. (*Id.* at 23.) He opined that D.L.G. would "require speech-language therapy, individualized special education, individual psychotherapy... [and] appropriate psychotropic medication." (*Id.*) He concluded that D.L.G. would "not be able to graduate from high school with an academic diploma, or be able to obtain college credits." (*Id.*) He also surmised that with her limited education, she would be limited in her employment. (*Id.*)

## A. Terms of the Infant Compromise

The Parties have agreed to settle this case for the total amount of $101,000. This amount includes: 1) $100,000 for past and future pain and suffering, future loss of wages, past medical expenses and any other non-Fund costs; and 2) $1,000.00 for future "Medicals and Qualifying Health Care Costs" as defined by Public Health Law § 2999-h(3) to be paid pursuant to Public Health Law § 2999(g)-(j). (Att'y Affirm. at 9.) From the funds, Plaintiff agreed that a total of $51,612.13 would be paid to her attorney: $25,000 in attorney's fees for services rendered; and $26,612.13 for disbursements. (*Id.*) Mayerlyn Gomez, as mother and natural guardian of D.L.G, will receive $48,387.87, jointly with an officer of a bank approved by the Court. (*Id.* at 16)

3

## III. DISCUSSION

### A. Standard of Review

Courts in this district must review any proposed settlement involving claims by or on behalf of an infant plaintiff. S.D.N.Y Local Civ. R. 83.2(a). The Court is charged with ensuring that the proposed compromise is in the "best interest of the infant" and that it "conform[s], as nearly as may be, to the New York State statutes and rules." S.D.N.Y. Local Civ. R. 83.2(a)(1). In evaluating the proposed settlement, the Court must follow a two-prong analysis. It must determine whether: "(1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, [is] fair and reasonable." *Martegani v. Cirrus Design Corp.*, No. 08-CV-8809 (KNF), 687 F. Supp. 2d 373 (S.D.N.Y. Jan. 22, 2010), referring to S.D.N.Y. Local Civ. R. 83.2(a); New York Judiciary Law ("NY Jud. Law") §474 and the New York Civil Practice Law and Rules ("CPLR") §§ 1205-08. *See Orlander v. McKnight*, No. 12-CV- 4745 (HBP), 2013 U.S. Dist. LEXIS 115672 (S.D.N.Y. Aug. 15, 2013).

In its evaluation of the proposed settlement, the Court must assess several documents. NY Jud. Law § 474 and CPLR § 1205-08 enumerate the required documents which must be filed to the court for approval of infant compromises. These documents include an affidavit from the "infant's representative" (the natural parent or guardian of the infant) accepting the proposed compromise and declaring it fair and reasonable; an affidavit from the infant's counsel, outlining "the terms and proposed distribution of the settlement" as well as the attorney's acceptance of both; medical or hospital reports; and the proposed settlement agreement including all personal injury claims must be submitted to the court. *Mateo v. United States*, No. 06-CV-2647 (KNF), 2008 U.S. Dist. LEXIS 59216, *6-*7 (S.D.N.Y. Aug. 6, 2008) referring to CPLR § 1208(a)-(c).

4

**B.  The Proposed Settlement is in the Best Interest of D.L.G.**

In determining whether the proposed settlement is in the best interest of the infant plaintiff, a court must give "significant deference" to the natural parent's or guardian's belief that the proposed settlement is in the best interest of the infant plaintiff.  *J.A. v. Ja-Ru, Inc.*, 08-CV-3640(DAB) (KNF), 2011 U.S. Dist. LEXIS 27453, *9 (S.D.N.Y. Mar. 15, 2011).  The Court must also consider a variety of factors including: 1) whether the proposed settlement will save the infant plaintiff the cost and aggravation of prolonged litigation, *Id.* at *8; 2) the circumstance in which the settlement arose, especially whether it was reached after discovery[1], *Jacobs v. United States*, 08-CV-8061 (KNF), 2012 U.S. Dist. LEXIS 162767 (S.D.N.Y. Nov. 13, 2012), and 3) whether the parties reached the proposed settlement through arm-length negotiations. *Kendrick D. v. Catholic Home Bureau*, 06-CV-13129 (DAB) (HBP), 2010 U.S. Dist. LEXIS 123616, *10 (S.D.N.Y. Oct. 14, 2010).

The Court also reviews the plan for the settlement money and may order Parties deposit the settlement funds in a high interest account for the benefit of the infant plaintiff.  CPLR § 1206(c) and *J.A.*, 2011 U.S. Dist. LEXIS 27453 at *9.

Plaintiffs agree to place the settlement money, minus attorneys' fees, into an interest-bearing account at a bank approved by the Court.  (Guardian's Aff. at 16.)  The account, which will be in Mayerlyn Gomez's name, is for the sole use and benefit of D.L.G, until she reaches the age of eighteen.  (*Id.*)

---

[1] The post-discovery marker is important in helping the Court assess whether Plaintiff can properly assess the strength of his or her case and the risk associated with trial.  *Kendrick D. v. Catholic Home Bureau*, 2010 U.S. Dist. LEXIS 123616 at *10 (S.D.N.Y. Oct. 14, 2010).

### C.  The Proposed Settlement is Fair and Reasonable

There is no clear test to determine whether a proposed settlement is fair and reasonable. *Kendrick D.*, 2010 U.S. Dist. LEXIS 123616 at *8.  To evaluate whether the proposed compromise is fair, however, the court compares "the terms of the compromise with the likely reward of litigation." *Martegani*, 687 F. Supp. at 377, quoting *Nelson v. Colgate-Palmolive Co.*, 199 F3d 642, 654 (2d Cir. 1999).  To make this determination, the Court must "form an educated estimate of the complexity, expense, and likely duration of such litigation…and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Mateo*, 2008 U.S. Dist. LEXIS 59216 at *6 quoting *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. June 29, 1972).  The proposed settlement is fair and reasonable when: (1) it was "not collusive" but resulted from arm's length negotiations; (2) the plaintiff's counsel is experienced in this area; and (3) the parties have had enough discovery to make intelligent decisions. *Kendrick D.*, 2010 U.S. Dist. LEXIS 123616 at *10.

#### 1.  Settlement Reached After Arm's-Length Negotiations

Gomez submitted a guardian affidavit to the Court requesting approval of the settlement. (Guardian's Aff. at 14-17.)  In it, she confirmed she had no interest adverse to her daughter's in this case and that she did not receive, directly or indirectly, any money from Defendant.  (*Id.* at 17.)  Gomez asserts that after due deliberation she agreed with her attorney's recommendation and accepted the settlement.  There is nothing in the record to suggest the Parties' negotiations did not occur at arm's length.

#### 2.  Plaintiffs' Attorney is Experienced and Found the Settlement Fair

Plaintiffs' attorney, James Fitzgerald, is a senior attorney at The Fitzgerald Law Firm, P.C., a firm which specializes in medical malpractice litigation.  Fitzgerald is an experienced

malpractice litigator specializing in birth defect cases.  (Fitzgerald Law Firm, P.C. website,
http://www.lawfitz.com/attorney-profiles/attorneys/james-p-fitzgerald/ .)  He has concluded that
the settlement is fair and reasonable.  (Att'y Affirm. at 9.)  In his affidavit to the Court he
indicates that he has recommended to Plaintiff Gomez that she accept the proposed settlement.
(*Id.*)

### 3.   Settlement Reached After Discovery

Plaintiffs' counsel indicated in his affidavit that, in assessing whether the settlement was
fair and reasonable, he considered the theory of the case and the ability to prove causation.
(Att'y Affirm. at 9.)  He found the settlement reasonable.  (*Id.*)  The Parties had ample discovery.
They made several discovery extension requests.  (Doc. No. 28, 30, 34 and 51.)  The Court
approved all the extension requests.  (Doc. No. 29, 31, 35, and 52.)  Furthermore, the Parties had
post-discovery and settlement conferences.  (Doc. No. 43.)  Thus, Plaintiffs had a good
assessment of the value and the merit of their case.

### 4.   The Award is Comparable to Likely Litigation Award

Gomez alleges that the treatment she received at the Bronx-Lebanon Hospital Center
during the delivery of D.L.G. and the neonatal care of D.L.G. caused D.L.G.'s cognitive and
behavioral deficits.  (Guardian Aff. at 14.)  However, there are plausible alternative causes such
D.L.G.'s premature birth and her low birth weight.  Going forward, Plaintiffs would face the
difficulty of establishing causation.  (Att'y Affirm. at 9.)  In light of litigation risks, the
settlement amount is fair and reasonable.  (*Id.*)

Plaintiffs' damage claims are limited because, by Gomez's own description, D.L.G. is a
"well-behaved and calm child."  (Guardian's Aff. at 16).  She is not taking any medication and is
not seeing any medical professionals for the deficiencies.  (*Id.*)  D.L.G. attends public school and

is not in special education. (*Id.*) Furthermore, the hospital medical expenses were paid by Medicaid. (*Id.* at 17.) Although Plaintiffs sought one million dollars in the Complaint, issues relating to causation and damages support the conclusion that a settlement in the $100,000 range is reasonable.

### D. Requested Attorneys' Fees is Reasonable

Plaintiff Gomez signed a contingent fee retainer agreement with The Fitzgerald Law Firm, P.C. under which counsel would receive one-third of the Plaintiffs' net settlement. (Doc. No. 57 at 43.) The proposed settlement allocates $51,612.13 to Plaintiffs' counsel. The Court is not bound by the contingent fee agreement signed by the infant guardian and must make its own determination of whether such allocation is reasonable. *Orlander v. McKnight*, No. 12-CV-4745 (HBP), 2013 U.S. Dist. LEXIS 115672, *6 (S.D.N.Y. Aug. 15, 2013) (finding agreement between infant plaintiff's guardian and attorney not determinative.)

In assessing whether the requested attorneys' fee is reasonable, the Court examines the contemporaneous time records, length of litigation, complexity of the case, resources needed to prove the case, expertise of the lawyer, *Orlander*, 2013 U.S. Dist. LEXIS 115672 at *7 quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. Apr. 24, 2007), as well as the contingent fee agreement. *Mateo*, 2008 U.S. Dist. LEXIS 59216 at *11.

Plaintiffs' Exhibit 2 includes a list of services the law firm performed, and also an itemized list of the costs it covered for the case including: depositions, expert consultations, filing fees, and obtaining medical records. (Exhibit 2 and 4.) Plaintiffs' counsel entered the case on February 19, 2014. Doc. No. 33. Since then, Fitzgerald has attended multiple conferences, has written several letters to the Court, and has participated in discovery. Based on the Court's

8

awareness of the customary and reasonable attorney fees, it finds the request of $51,612.13 reasonable.

Furthermore, New York Judiciary Law § 474-a limits attorney contingency fees to thirty percent of the first $250,000 retained in medical malpractice cases. NY CLS Jud § 474-a. This Court has approved a one-third contingency fee agreement as reasonable compensation. *Orlander,* 2013 U.S. Dist. LEXIS 115672 at *23. The requested attorneys' fee is within the range of acceptable compensation. The Court thus finds that the fees and costs requested reasonable. The allocation of $26,612.13 for disbursement is also reasonable.

**E.  Gomez' Request to Withdraw $10,000 Is Denied**

Plaintiff Gomez asks to withdraw $10,000 from the funds to purchase a vehicle. She asserts that this will benefit D.L.G. as it will allow her to take D.L.G. to doctor's appointments and recreational activities. (Guardian's Aff. at 16). In reviewing Gomez's claim, the Court must determine whether the early release of the funds requested is in the best interest of the infant Plaintiff. The "purpose of these funds is not to supplement or substitute for the financial obligations of the parent to the child. Rather, the funds are to provide for the child's future, and the Court will only permit expenditure of the funds for an extraordinary purpose." *Kendrick D.,* 2010 U.S. Dist. LEXIS 123616 at *19 quoting *Star S. v. Clark,* 01-CV-6871 (DLI) (CLP), 2009 U.S. Dist. LEXIS 1443 at *1 (E.D.N.Y. Jan. 9, 2009). Expenditure for clothing and furniture will not typically justify the early release of the funds. *Star,* 2009 U.S. Dist. LEXIS 1443 at *2.

Plaintiffs live in Flushing, Queens. Gomez states that public transportation is not convenient in that area of the city and that the vehicle will benefit D.L.G. (*Id.*) The Court need not evaluate the merits of Gomez's justification, but instead looks to whether the justification is for an "extraordinary purpose." The purchase of the vehicle, while it would lessen the

dependence on public transportation, is not an extraordinary circumstance which constitutes withdrawal of a percentage of the funds set aside for D.L.G. Furthermore, it is also unclear how purchasing the car differs from purchasing clothing and furniture, both of which are insufficient justifications for the early release of the funds. Gomez's request should be **DENIED**.

## IV. CONCLUSION

In assessing the reasonableness of the settlement, the Court need not "decide the merit of the case or resolve unsettled legal questions." *Kendrick D.*, 2010 U.S. Dist. LEXIS 123616 at *15 quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (Feb. 25, 1981). The Court, however, "must still analyze the settlement figure under the appropriate standards and factors." *Kendrick D.*, 2010 U.S. Dist. LEXIS 123616 at *15. Having examined the Record and the Parties' submissions, the Court finds that the settlement is fair and reasonable because it avoids lengthy litigation, the funds will be placed in an interest bearing account for the sole benefit of D.L.G, the settlement was reached after arm's length negotiations and it is endorsed by the infant Plaintiff's mother. For the reasons outlined above, I recommend that the proposed infant compromise order providing for settlement of this case, as to the infant plaintiff, D.L.G. for $101,000 should be **GRANTED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, New York, NY 10007 and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, NY 10007. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later

appeal to the U.S. Court of Appeals. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**DATED: June 1, 2015**
**New York, NY**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge